IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RYAN CREEK ACQUISITIONS, INC.,** et al., ) ) ) Plaintiffs, ) ) vs. ) ) **RENASANT BANK and DANIEL J. GORMAN, JR.,** ) ) ) Defendants, ) ) **RENASANT BANK,** ) ) Counter Claimant, ) ) **RYAN CREEK ACQUISITIONS, INC.,** et al., ) ) ) Counter Defendants. ) | Civil Action Number **4:11-cv-00487-JEO** |

## MEMORANDUM OPINION

Ryan Creek Acquisitions, Inc., Alabama Boating Centers, Inc., Logan Martin Boating Center, Inc., Billy Cosper, Jr. ("Cosper"), and Andrew Kaufmann ("Kaufmann") (collectively "plaintiffs") originally filed this action against Renasant Bank and Daniel J. Gorman, Jr. ("Gorman") in state court. (Doc. 1-2). Renasant Bank and Gorman removed the action to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, by asserting that plaintiffs fraudulently joined Gorman, an Alabama resident. (Doc. 1). Gorman also moved to dismiss all claims against him, (doc. 6), and Renasant Bank moved to dismiss various claims against it (doc. 7). Plaintiffs then moved to remand the action to state court, (doc. 14), and for leave to file an Amended Complaint, (doc. 15). For the reasons stated below, plaintiffs' motion to remand is due

to be granted, thus leaving the remaining motions for disposition by the State court.

## I.   FACTS AND PROCEDURAL HISTORY

On January 7, 2011, plaintiffs commenced this action in the Circuit Court of St. Clair County, Alabama, alleging various state-law torts arising from a promissory note Renasant Bank issued Ryan Creek Acquisitions.  (Doc. 1-2).  Accordingly to plaintiffs, in December 2006, Cosper and Kaufmann formed Ryan Creek Acquisitions, Inc., to acquire and subsequently operate Ryan Creek Marina on Smith Lake in Cullman County, Alabama, and Gorman, the Senior Vice President of Renasant Bank in charge of Commercial Lending, contacted them in January 2007 to propose that Renasant Bank serve as a lender for Ryan Creek Acquisitions.  (Doc. 1-2 at 3 ¶¶ 11-13).  Plaintiffs allege that Gorman represented that Renasant Bank would extend $3,500,000 in credit with an interest rate "equal to the London Interbank Offered Rate ('LIBOR') plus two (2%) percentage points, calculated monthly and adjustable, and that the loan would be amortized over nineteen and a half (19 ½) years." (Doc. 1-2 at 3-4 ¶ 13).  According to plaintiffs, they entered into a promissory note based on Gorman's representations, but Renasant Bank charged them a fixed interest rate of 7.32 percent, which "significantly exceeded" the agreed to interest rate and led to "far-reaching and devastating economic harm for Ryan Creek Acquisitions, Logan Martin Boating Center,[1] and their owners, Cosper and Kaufmann."  (Doc. 1-2 at 6-7 ¶¶ 20-21).  As a result of the higher than anticipated loan payments, plaintiffs contend that they lacked sufficient cash flow to operate Ryan Creek Marina and suffered resulting damages in excess of $10 million.  (Doc. 1-2 at 5 ¶ 15, 11 ¶ 26).

---

[1] Cosper and Kaufmann also own Logan Martin Boating Center, which operates a marina on Logan Martin Lake in St. Clair County, Alabama.  (Doc. 1-2 at 5 ¶ 10).

The Complaint is composed of nine separate counts with Counts I, II, and VII directed solely to Renasant Bank and the remaining counts directed to Renasant Bank and Gorman.  (Doc. 1-2).  In Count I, plaintiffs seek entry of a declaratory judgment stating: (a) they are not indebted to Renasant Bank or, to the extent that such debt is owed, the appropriate credits should be applied against such indebtedness, (b) any guaranties signed by the individual plaintiffs are null and void, (c) any notes or other documents signed by the corporation plaintiffs are null and void, (d) Renasant Bank failed to act in a commercially reasonable manner in connection with the loans, guaranties, and related documents, and (e) plaintiffs do not owe any money pursuant to subject notes, guaranties, or related documents.  (Doc. 1-2 at 11 ¶ 28).  In Counts II through IX, plaintiffs allege the following state-law torts: negligent loan origination/administration (Count II), fraud/misrepresentation/suppression (Count III), promissory fraud (Count IV), promissory estoppel (Count V), equitable estoppel (Count VI), breach of contract (Count VII), breach of duty of good faith and fair dealing (Count VIII), and conspiracy (Count IX).  (Doc. 1-2 at 12-17).

On February 11, 2011, defendants timely removed the action to this court, asserting that diversity jurisdiction exists because plaintiffs fraudulently joined Gorman, an Alabama resident, and complete diversity exists between plaintiffs, Alabama citizens and entities, and Renasant Bank, a Mississippi corporation.  (Doc. 1 at 3 ¶ 8).  Five days later, on February 16, 2011, Gorman moved to dismiss all claims against him and Renasant Bank moved to dismiss the claims against it in Counts III, IV, V, VI, VIII, and IX, on the ground that the claims are time-barred and/or do not constitute recognized causes of action under Alabama law.  (Doc. 6 at 2 ¶ 5; Doc. 7 at 1).  On March 14, 2011, plaintiffs moved to remand the action back to the Circuit Court of St. Clair County on the ground that Gorman is a proper defendant.  (Doc. 14).  In support of

the motion, plaintiffs attached affidavits from Cosper and Kaufmann. (Docs. 14-1, 14-2). That same day, plaintiffs moved also for leave to file an Amended Complaint. (Doc. 15).

## II.  DISCUSSION

### Defendants' Removal and Plaintiffs' Motion to Remand

A civil case filed in state court may be removed by defendants to federal court if the matter could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). Here, defendants assert that plaintiffs could have originally filed the action in this court because this court has diversity jurisdiction over civil actions in which the amount in controversy exceeds $75,000, and the parties are citizens of different states. *See* 28 U.S.C. § 1332. In so doing, defendants avert the absence of complete diversity among the parties by asserting that plaintiffs fraudulently joined Gorman to defeat the possibility of diversity jurisdiction. "A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: '(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). As referenced above, defendants advance the former option by asserting there is no possibility plaintiffs can establish a cause of action against Gorman.

Defendants bear a heavy burden in establishing fraudulent joinder because federalism concerns mandate that removal statutes are construed narrowly. *Crowe*, 113 F.3d at 1538. Factual allegations are construed in the light most favorable to the plaintiff and uncertainties about state substantive law resolved in favor of remand. *Id*. Indeed, "[plaintiffs] need not have

a winning case against [Gorman]; [they] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (emphasis in original). Therefore, if a *possibility* for a valid claim against Gorman exists, the joinder is proper and this court must remand the matter to the Circuit Court of St. Clair County. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).

Defendants contend that there is no possibility that plaintiffs can establish a cause of action against Gorman because all the claims against him are barred by Alabama's two-year statute of limitations for fraud claims and/or do not constitute recognized causes of action under Alabama law. *See* ALA. CODE § 6-2-38(l) ("All actions for injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). Specifically, defendants assert that the face of the Complaint demonstrates that the claims are time-barred because plaintiffs allege fraud based on misrepresentations that occurred *four* years before filing of the Complaint. (Doc. 1 at 7 ¶ 22). Defendants acknowledge that the two-year Alabama limitations period for fraud claims is subject to the saving clause in ALA. CODE § 6-2-3,[2] but contend that the Complaint offers no basis for invocation of § 6-2-3 because it does not reference the statute, state when plaintiffs discovered the alleged fraud, or allege that defendants concealed the fraud. (Doc. 1 at 7 ¶ 24). "[T]he burden is upon he who claims the benefit of § 6-2-3 to show that he comes within it." *Amason v. First State Bank of*

---

[2] Section 6-2-3 provides: "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Thus, the two-year statute of limitations begins to run "when the plaintiff discover[s] the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable case." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 417 (Ala. 1997).

*Lineville*, 369 So. 2d 547, 551 (Ala. 1979).[3]

In view of the Eleventh Circuit's instruction that this court should remand an action on the basis of fraudulent joinder "only if the defendants have proven by clear and convincing evidence . . . that there is '*no possibility*' that [plaintiffs] 'can establish a cause of action against the resident defendant,'" the issue for this court becomes whether there is *a possibility* that an Alabama court could find that the statute of limitations has not run on plaintiffs' claims against Gorman. *Henderson*, 454 F.3d at 1283 (quoting *Crowe*, 113 F.3d at 1538) (emphasis original). More specifically, the court must determine whether an Alabama court could possibly find that the Complaint sufficiently invokes the savings clause in § 6-2-3. Such a determination is not simple because, as noted by the Eleventh Circuit, "the state of the fraudulent concealment pleading requirement in the context of Alabama fraud cases has often been difficult to discern." *Henderson*, 454 F.3d at 1283.

In particular, Alabama law is unclear as to whether fraudulent concealment must be pled to invoke § 6-2-3. *Id*. In *Miller v. Mobile County Board of Health*, 409 So. 2d 420 (Ala. 1981), the Alabama Supreme Court held that the plaintiffs could not benefit from § 6-2-3 because the "complaint fails to allege any of the facts or circumstances by which the [defendants] concealed the cause of action or injury," and "also fails to allege what prevented [plaintiffs] from discovering facts surrounding the [fraud]." 409 So. 2d at 422. More recently, the Alabama

---

[3] Plaintiffs submitted affidavits from Cosper and Kaufmann in support of its motion to remand. Docs. 14-1 and 14-2. However, the court need not consider these affidavits because "the district court must look at the case at the time of removal to determine whether it has subject-matter jurisdiction...changes to the pleadings do not impact the court's exercise of supplemental jurisdiction." *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1244 (11th Cir. 2007). *See also Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007) ("the removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447(c) requires that a court review the propriety of removal on the basis of *the removing documents*") (emphasis added).

Supreme Court relied on *Miller* in *Smith v. National Security Insurance Co.*, 860 So. 2d 343 (Ala. 2003), to hold that "[the plaintiff's] general reference to the alleged fraud as being 'of a continuing nature' is wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint." 860 So. 2d at 347. However, in some instances the Alabama Supreme Court has been less stringent on altogether excluding the possibility that a plaintiff invoked § 6-2-3 and summarily dismissing claims by holding that "[a] dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply." *Travis v. Ziter*, 681 So. 2d 1348, 1351 (Ala. 1996) (citing *Williams v. Capps Trailer Sales*, 589 So. 2d 159, 160 (Ala. 1991)). Indeed, Alabama courts have recognized that "the plaintiff can overcome a defense of limitations by averment and proof of circumstances permitting tolling of the running of the limitations period, such as fraud on the part of the defendant in concealing the wrongdoing." *Jim Walter Homes, Inc. v. Nicholas*, 843 So. 2d 133, 136 (Ala. 2002). *See also Payton v. Monsanto Co.*, 801 So. 2d 829, 834 (Ala. 2001) (same).

Here, plaintiffs contend that they sufficiently invoke equitable tolling by alleging suppression of material information before, during, and after origination of the loan. (Doc. 14 at 17-18). In support, they identify the following allegations in the Complaint as suggesting that the alleged fraud was concealed:

> 32.   As more particularly set forth above, the Defendants intentionally, willfully, wantonly, recklessly, negligently, and/or innocently misrepresented material facts to and suppressed information from Plaintiffs to induce them to act or refrain from acting. The Defendants made these representations with knowledge that they were false or with reckless disregard for whether they were true or not. Further, the Defendants suppressed information from Plaintiffs despite being under a duty to disclose that information to Plaintiffs.

>    ...
>
>    37.   In an effort to induce Plaintiffs to enter into the subject agreements, Defendants intentionally, willfully, wantonly, recklessly, negligently, and/or innocently misrepresented material facts to and suppressed information from Plaintiffs. At the time Defendants made the above misrepresentations and suppressions, they intended to deceive Plaintiffs and never intended to act in the manner described in their statements.

(Doc. 1 at 10 ¶ 32, 11 ¶ 37). Plaintiffs further contend that the Eleventh Circuit's opinion in *Henderson* demonstrates that they "need not set out a specific claim, cause of action, or paragraph devoted solely to the issue of tolling of the statute of limitation," and, instead, "[i]t is enough for plaintiffs to allege suppression of material information." (Doc. 14 at 14).

Defendants respond that *Henderson* "demonstrates just the opposite," because, before holding that the district court erred in finding fraudulent joinder, the Eleventh Circuit noted that the allegations in the complaint at issue there provided more than "generalized and conclusory" allegations of fraudulent suppression. (Doc. 17 at 5-6). Defendants further note that in *Waldrup v. Hartford Life Insurance Co.*, 598 F. Supp. 2d 1219 (N.D. Ala. 2008), Chief Judge Sharon Lovelace Blackburn construed *Henderson* and Alabama case law to articulate the controlling law as stating that "generalized references to concealment, without any supporting factual detail, are insufficient to invoke the savings clause of § 6-2-3." 598 F. Supp. 2d at 1227. Applying this rule to the present action, defendants contend that the Complaint contains only a conclusory mention of "suppression" without supporting factual allegations and, therefore, fails to invoke the savings clause of § 6-2-3.

After reviewing the allegations in the Complaint and uncertainties about Alabama law in favor of plaintiffs, this court believes that an Alabama state court could conclude that a summary

dismissal of plaintiffs' claims against Gorman is not warranted in view of plaintiffs' reference to defendants' alleged suppression of information, particularly that "defendants ... suppressed information from plaintiffs to induce them to act or refrain from acting," (doc. 1-2 at 12 ¶ 32), and their desire to amend the Complaint, (doc. 15).  While plaintiffs fail to allege facts and circumstances by which defendants concealed the alleged fraud, this court cannot find that it is clear from the face of the Complaint that the savings clause of § 6-2-3 does *not* apply.  *See Travis*, 681 So. 2d at 1351 ("A dismissal based on the statute of limitations is proper only if, from the face of the complaint, it is apparent that the tolling provisions do not apply.").  Further, summary dismissal of plaintiffs' claims against Gorman as time-barred by an Alabama state court seems unlikely because Alabama has an "overarching liberal policy of allowing amendments" to pleadings.  *Ex parte Liberty Nat'l Life Ins. Co.*, 858 So. 2d 950, 954 (Ala. 2003) (citing Rule 15(a), ALA. R. CIV. P.).  As the Southern District of Alabama noted in *Grady Brothers Investments, LLC v. General Motors Acceptance Corp.*, No.07-0747, 2007 WL 4577701, *6 n.15 (S.D. Ala. Dec. 27, 2007), the typical remedy for failure to satisfy the particularity requirements of pleading fraud claims is "not dismissal on the merits, but rather is an opportunity for the plaintiff to replead."

     In sum, defendants have failed to make a clear and convincing showing that there is no possibility that plaintiffs can establish a cause of action against Gorman.  This court simply cannot conclude that plaintiffs would not be entitled to an opportunity in state court to amend the complaint to add allegations to sufficiently invoke the savings clause and, therefore, possibly establish a cause of action against Gorman.  This conclusion is support by the Eleventh Circuit's observation in *Henderson* that "[o]rdinarily, where the viability of a plaintiff's claim against a

non-diverse defendant depends on whether section 6-2-3's savings clause applies, the case should be remanded summarily; such a question is emphatically a matter for the state courts to decide." 454 F.3d at 1282.  As further explained by the Eleventh Circuit, "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between federal and state judiciaries that our federal system demands." *Id*. at 1284.

### III.  CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Remand, (doc. 14), is due to be granted. The remaining motions, (docs. 6, 7 & 15), will be left for disposition by the State court. An order in accordance with these findings will be entered contemporaneously herewith.

**DONE**, this 3rd day of August, 2011.

/s/ John E. Ott
**JOHN E. OTT**
United States Magistrate Judge